[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants, the Hartford Courant Co.; G. Claude Albert; Maurice Reidy; the Journal Register Co., d/b/a Imprint; William Sheedy, Jr.; David K. Eisenbud; the New Britain Herald; and Jonathan Cooper, move for summary judgment as to all counts of the complaint filed against them by the plaintiff, Dana Reaves. On February 10, 2003, the court heard argument on these motions.
Summary judgment shall enter if the pleadings and documentary proof submitted demonstrate that no genuine dispute exists as to material fact and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.
Counts one through three allege that the Hartford Courant Co., Albert, its deputy managing editor, and Reidy, a reporter for that newspaper, engaged in libel per se, libel per quod, and invasion of privacy by false light arising from the December 29, 2001 publication of headlines and an accompanying article which purport to describe a court proceeding at which the plaintiff entered pleas of nolo contendere to charges of evading responsibility, in violation of General Statutes § 14-224
(b), and reckless driving, in violation of General Statutes § 14-222.
Counts four through six allege similar claims against the Journal Register Co., Sheedy, its publisher, and Eisenbud, a reporter for a newspaper known as the Rocky Hill Post, for publishing headlines and a companion article in that newspaper on January 4, 2002, concerning the same court proceeding.
Counts seven through nine contain similar allegations against the Journal Register Co. as owner of the New Britain Herald, Cooper, as executive director of that newspaper, and Eisenbud, as its reporter, arising from headlines and an article published on January 4, 2002, regarding the same court proceeding. CT Page 2669
The defendants raise the issue of conditional privilege as the basis for their summary judgment motions. The gist of the plaintiff's claims against the defendants is that the publications insinuated that the plaintiff was convicted and sentenced on the charges noted above because he was responsible for a motor vehicle accident which resulted in the death of Heather Kinney when, in actuality, his convictions were for motor vehicle violations arising from a separate and distinct accident which occurred near the fatal accident and almost immediately thereafter.
The complaint also alleges, as to the Hartford Courant and New BritainHerald articles, that they falsely state that the plaintiff received a total effective sentence of one year incarceration when, in fact, that one-year sentence was fully suspended. This inaccuracy was abandoned as a source of defamation or false light by plaintiff's counsel at oral argument.
A review of the law of defamation in conjunction with newspaper reportage is necessary at this point. Defamation is a false utterance of fact which harms the reputation of another. Libel is defamation which is made in a more permanent and proliferative form such as by the written word or electronic broadcast. The common law of Connecticut recognizes a distinction between libel per se and libel per quod. Battista v. UnitedIlluminating Co., 10 Conn. App. 486, 491 (1987).
Libel per quod refers to false statements whose derogatory nature is only revealed in the light of extrinsic facts known to the recipient of the communication. Id. In an action for libel per quod, the plaintiff must plead and prove actual damages in order to recover. Id.
Libel per se refers to false publications or broadcasts which are defamatory on their face, Id., 491-92. A plaintiff is entitled to recover general damages for libel per se, for humiliation, loss of reputation, etc. without having to plead and prove special damages. Id. Special damages are "actual pecuniary" losses caused by the false statement.Miles v. Perry, 11 Conn. App. 586, 602 (1987).
With respect to newspaper publication, courts have had to grapple with the competing goals of compensating those injured by erroneous and deprecatory statements and of maintaining the vigorous exercise of freedoms of speech and the press. As a result of this conflict, Connecticut has recognized privileges to make statements in certain circumstances without fear of liability for defamation. In Charles ParkerCo. v. Silver City Crystal Co., 142 Conn. 605 (1955), our Supreme Court CT Page 2670 adopted a privilege of "fair comment" regarding a radio speech. The Court held that this privilege extends to "misstatements of fact if made in good faith, without malice and under the honest belief that they are true." Id., 616; see also Griffin v. Clemow, 28 Conn. Sup. 109, 110
(1968).
The United States Supreme Court elevated this privilege of fair comment to constitutional stature. Goodrich v. Waterbury Republican-American,Inc., 188 Conn. 107, 115 (1982). In New York Times Co. v. Sullivan,376 U.S. 254 (1964), the United States Supreme Court held that state libel law must yield to the right to publish articles about public officials. That case announced that a publisher was immune from liability for inaccuracies impugning a public official unless the complainant could prove, by clear and convincing evidence, "actual malice," i.e. that the article was disseminated with knowledge that it was false or with reckless disregard as to truth or falsity. Id., 280. In addition, only compensatory damages are awardable. Id.
This constitutional privilege was expanded to cover articles published about public figures, as well as officials, in Curtis Publishing Co. v.Butts, 388 U.S. 130, 162 (1967). Four years later, in a plurality opinion, the United States Supreme Court dallied with extending the privilege to situations involving private persons caught up in matters of public concern. Rosenbloom v. Metromedia, Inc., 403 U.S. 29 (1971).
However, that last extension was revisited and contracted by the Court in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). That case held that erroneously disparaging publications regarding private persons involved in matters of public concern fall outside of the broad privilege afforded by the cases of New York Times Co. v. Sullivan, supra, and CurtisPublishing Co. v. Butts, supra. Id., 342. Instead, that federal tribunal adopted another approach whereby traditional state libel laws apply as to libel per quod claims, while the more stringent "actual malice" criterion governs libel per se allegations pleaded by private citizens involved in matters of public interest. Id., 347-49. In other words, for libel per se, or where punitive damages are sought, the complainant must prove, by clear and convincing evidence, that the false statement was made knowingly or with reckless disregard as to its veracity.
Finally, in Dun Bradstreet, Inc. v. Greenmoss Builders,472 U.S. 749 (1985), the United States Supreme Court ruled that the states are free to adopt whatever defamation laws they wish with respect to disparaging misstatements about private entities as to matters of solely private concern. In such cases, there is no constitutional requirement that "actual malice" be pleaded and proven whether the claims CT Page 2671 allege libel per se or per quod or whether punitive damages are sought.Id., 761. That case concerned a private credit report distributed to only five subscribers and which contained an inaccurate evaluation based on a nonexistent bankruptcy filing. Id.
Whether the conditional privilege of fair abridgement claimed by the defendants exists in a given scenario is a matter of law for the court to decide; while the issue of whether an existing privilege was abused is a question of fact. Goodrich v. Waterbury Republican-American, Inc.,supra, 120. The court holds, as a matter of law, that these defendants possess a conditional privilege of fair comment and abridgement in this case.
The defendants concede that the plaintiff is neither a public official nor a public figure. However, the court proceeding which was the subject of these publications is a matter of public concern and interest. The judicial proceedings reflect the doings of a branch of state government. The criminal case against the plaintiff initially entailed charges of misconduct of a motor vehicle, in violation of General Statutes §53a-57, and felony evading responsibility, in violation of General Statutes § 14-224 (a), which charges related to the death of Heather Kinney, a motorist on a public highway. Under such undisputed facts, the rules set forth in Gertz, supra, apply. Brown v. K.N.D. Corp.,7 Conn. App. 418, 422 (1986); Red Apple II, Inc. v. Hartford Courant, Superior Court, Hartford J.D., d.n. CV95-547043 (January 17, 1996) (Hale, JTR).
 I LIBEL PER SE
The first, fourth, and seventh counts allege libel per se regarding the three publications. Under Gertz, supra, the plaintiff must plead and prove, by clear and convincing evidence, that any derogatory inaccuracies were the product of "actual malice," i.e. of intentional misstatements or reckless disregard for their accuracy. All three counts lack any factual allegations of knowing or reckless misreporting of the court proceedings of December 28, 2001. Paragraph 11 of the first count alleges ordinary negligence by stating that the Hartford Courant article and headlines were the product of a "breach of reasonable care" and that the defendants to whom that count is directed "should have known" of their mistake.
Proof of a failure to investigate thoroughly, without more, is insufficient, as a matter of law, to establish reckless disregard for truth or falsity. Gertz v. Robert Welch, Inc., supra, 332. The fourth and CT Page 2672 seventh counts contain parallel language regarding the other publications. The absence of a claim of factual allegation supporting "actual malice," i.e. intentional or reckless misstatement, in a case involving public concern dictates, as a matter of law, that summary judgment must be granted on behalf of the defendants on these counts of libel per se.
 II LIBEL PER QUOD
As noted above, the holding in Gertz, supra, permits state law to employ traditional principles for liability and recovery for libel per quod where the plaintiff is a private person. However, the second, fifth, and eighth counts of the complaint, which allege libel per quod, specifically aver that the reputedly misleading and derogatory publications were the product of reckless conduct. Consequently, the court must examine the pleadings and the documents submitted in support of and in opposition to the motions for summary judgment to assess whether any genuine factual dispute exists as to the matter of reckless conduct. Put another way, the court, viewing the evidence, and inferences derivable from that evidence, most favorably toward the plaintiff must determine whether a reasonable and rational trier-of-fact could find that, by a preponderance of the evidence, these publications recklessly falsely reported the court proceeding pertaining to the plaintiff's pleas and sentencing. The court holds that no reasonable trier-of-fact could arrive at that conclusion.
The court assumes, arguendo, that the three headlines and articles imply that the plaintiff entered pleas of nolo contendere to misdemeanor evading responsibility and reckless driving and was sentenced to these charges for conduct related to the death of Heather Kinney. A review of the transcripts, whose accuracy is undisputed, for the court proceedings relating to the plaintiff on October 26, 2000, and December 28, 2001, discloses rampant ambiguity as to the factual bases for the charges which were addressed on the latter date.
Originally, the plaintiff faced misconduct with a motor vehicle and felony evading responsibility charges. Obviously, by their character, these charges must pertain to a motor vehicle mishap which allegedly caused the death and/or serious physical injury to another and not to mere property damage. On October 26, 2000, the assistant state's attorney filed a substituted information containing, inter alia, the reckless driving and misdemeanor evading charges to which the plaintiff later pleaded nolo contendere. CT Page 2673
At the December 28, 2001 hearing the plaintiff entered the nolo contendere pleas, and a different assistant state's attorney recited the factual basis for the pleas. She indicated that "this was a serious motor vehicle accident," but then continued to explain that two accidents had occurred. She further recounted facts about a woman lying in the road with "very serious injuries" and referred to that woman as the "victim" twice. She explained that Kinney's vehicle and that of the plaintiff had been observed driving erratically, with one vehicle seeming to follow the other. Also, she indicated that another motorist had seen the plaintiff operating his vehicle erratically requiring that other driver to take evasive action. This was just before the plaintiff lost control of his vehicle and struck guardrails.
The assistant state's attorney then conveyed to the court the particulars of an agreed recommendation as to sentence. The prosecutor justified the substitution of lesser charges and particular sentence recommendation by noting a lack of evidence to show that the two vehicles had collided. She reiterated "that the original charges were far more serious and that the conclusion made by [the former prosecutor] over a year and a half ago were that the State could not go forward and prove that [the plaintiff's] vehicle had contact with Heather Kinney's." She remarked that, in the preceding one and one-half years, she herself had investigated and reinvestigated the accident and was unable to uncover any more evidence as to that circumstance. She alerted the court that the deceased's relatives were present and wished to address the court before sentence was imposed.
On December 28, 2001, the prosecutor never affirmatively stated that the substituted charges pertained solely to the second accident involving damage to guardrails. It should be noted that defense counsel also was silent on that issue. Even for one trained in the law, much less for a layperson, it is unclear whether the substitution of lesser charges and suspended sentence recommendation was based on a lack of subsidiary evidence of vehicle contact, but still pertained to the fatal accident, or was grounded on new charges arising after further consideration and involved the damaged guardrails from the second accident. As is noted above, the initial charges clearly stemmed from the first and fatal accident.
The judge's canvass of the plaintiff's understanding of his new pleas sheds no better light on the situation. The judge inquired if defense counsel "went over the evidence that the State could present against you in the cases that are pending against you." Later, the judge asked if the plaintiff "heard what the State's representations were. The court then CT Page 2674 made a finding that a factual basis for the nolo contendere pleas existed "as represented by the State in their presentation of the facts." Again, the judge never stated that the factual basis for the pleas related to the guardrail accident rather than the fatal accident or a combination of both accidents.
Before sentencing, the court allowed members of the deceased's family to speak. While this opportunity to address the court might be susceptible to interpretation as a merely gratuitous courtesy, it equally leads the rational observer to believe that the family members were entitled to input regarding the sentence of one responsible for the death of their loved one rather than for damage to guardrails.
Both the plaintiff and his lawyer declined to address the court as to sentencing.
In his sentencing comments, the judge stated that "[t]he history of the case is a tragedy and indicates that it resulted in what happened and no one knows specifically what happened resulted in the most serioustragedy conceivable." (Emphasis added.) Obviously, the judge was speaking about the death of Heather Kinney and not of the second accident. Also, the court used the word "victims," which must refer to the deceased and her kin. Finally, the judge described the negotiated pleas as a "fair resolution of the matters."
The judge imposed a fine of $150 on the evading responsibility count and a sentence of one year, execution suspended, and two years probation with special conditions, including 150 hours of community service on the reckless driving charge. Parenthetically, it appears that the judge misspoke and transposed the charges for which the punishments were imposed because the maximum allowable sentence for reckless driving is thirty days, while evading responsibility carries a one-year maximum which is what the judge imposed on the reckless driving count.
The transcripts reveal that the plea and sentencing hearing of December 28, 2001, was murky, at best, as to the factual predicate of the charges which were disposed of on that date. When evaluating whether a newspaper account of a criminal court proceeding conveyed a fair summary or abridgement meriting privilege, a court must examine those proceedings from the perspective of a reasonable and rational reporter and must avoid the temptation to adopt a view of an astute and highly trained defense attorney. Where the proceedings are ambiguous, such as in this case, what is material is what a reasonable observer would understand occurred.Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 513 (1991). CT Page 2675
In Woodcock v. Journal Publishing Co., 230 Conn. 525 (1994), our Supreme Court held that if a governmental proceeding "bristles with ambiguities," a complainant cannot recover for libel if the account published is one of a number of rational interpretations. Id., 540. Although Woodcock v. Journal Publishing Co., supra, involved public figures or officials and employed the stricter "actual malice" test, this court discerns that the same rule applies because the plaintiff has specifically pleaded recklessness in reporting as the basis for the libel per quod counts.
The court rules, as a matter of law, that the headlines and articles in question communicated a completely rational and reasonable interpretation of the persistently ambiguous court proceedings despite the fact that another interpretation, more palatable to the plaintiff, was also possible. Simply put, an ordinary spectator at the plaintiff's criminal hearing could logically and reasonably construe his pleas of nolo contendere to relate to his operation of a motor vehicle in conjunction with the fatal accident rather than to a second, separate accident involving the striking of guardrails. Therefore, no trier-of-fact could reasonably find, by a preponderance of the evidence, that any of the three publications recklessly libeled the plaintiff as he has alleged in the libel per quod counts.
 III FALSE LIGHT
The third, sixth, and ninth counts allege that the three publications invaded the plaintiff's privacy by recklessly casting him in a false light based on the same claims as set forth in the libel per quod counts. To establish an invasion of privacy by false light, a complainant must demonstrate that (1) the false light would create a highly offensive image of the plaintiff to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and false light cast. Honan v. Dimyan, 52 Conn. App. 123,132 (1999); Jonap v. Silver, 1 Conn. App. 550, 557-58 (1984).
This tort has also rubbed up against the constitutional rights to free speech and press. In Time, Inc. v. Hill, 385 U.S. 374 (1967), the United States Supreme Court ruled that the more rigorous proof demanded in libel cases by New York Times Co. v. Sullivan, supra, provides a guide for false light claims involving the press. Id., 390. In that case, the United States Supreme Court applied the "actual malice" standard to the false light claim. Id., 387-88. CT Page 2676
After Time, Inc. v. Hill, supra, was decided, the United States Supreme Court issued its rulings in the libel cases of Rosenbloom v. Metromedia,Inc, supra, and Gertz v. Robert Welch, Inc supra. In Cantrell v. ForestCity Publishing Co., 419 U.S. 245 (1974), that Court recognized that these changes in libel law standards might have similar ramifications for false light claims. It declined, however, to address the issue of whether the stricter or more relaxed standard would apply in cases involving private parties embroiled in matters of public concern because the trial court had utilized the more stringent standard anyway. Id. 250-51.
Our Supreme Court did have occasion to confront this issue in Goodrichv. Waterbury Republican-American, Inc., supra. The Court held that, in false light cases, "the actual malice standard still applied under the public interest analysis announced in Hill despite the rejection of this principle in the libel area." Id., 130. Our Supreme Court refused to alter this standard for false light claims until the United States Supreme Court speaks on the issue. Id., fn 22.
Because the present case pertains to a private person enmeshed in a public proceeding of public concern, the plaintiff must plead and prove actual malice, i.e. knowing or reckless falsity. For the same reasons that the court has ruled that reckless conduct could not be established with respect to libel per quod, as a matter of law, in section II of this memorandum, the defendants are entitled to summary judgment as to the false light counts.
Summary judgment is granted on behalf of all defendants on all counts.
Sferrazza, J. CT Page 2677